IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03183-PAB

PAUL CUSHMAN, JR.,

       Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

       Defendant.

---

## ORDER

---

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Paul Cushman, Jr. on October 23, 2020.  Plaintiff seeks review of the final decision of defendant (the "Commissioner")[1] denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

## I. BACKGROUND

On January 13, 2018, plaintiff applied for social security benefits under Title II of the Act.  R. at 15.  Plaintiff alleged a disability onset date of June 13, 2017.  *Id.*  Plaintiff's claims were initially denied on May 25, 2018 and denied on reconsideration on October 26, 2018.  *Id.*  Plaintiff requested a hearing before an administrative law judge

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Accordingly, she is substituted as defendant in this case for Andrew M. Saul, former Commissioner of Social Security.  *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

("ALJ").  *Id.*

On February 26, 2020, the ALJ issued a decision denying plaintiff's claim.  R. at 12, 24.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the onset date and had the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; peripheral neuropathy; carpal tunnel syndrome; and fibromyalgia, which significantly limits plaintiff's ability to perform basic work activities.  R. at 17.  The ALJ also found that plaintiff has additional non-severe impairments, including hypertension, gastroesophageal reflux disease, and high cholesterol, which are managed with medications and/or conservative treatment and which do not cause more than a minimal effect on plaintiff's work-related activity.  *Id.* The ALJ also concluded that plaintiff's medically determinable mental impairments of depression and anxiety also do not cause more than minimal limitation in plaintiff's work activity and are therefore non-severe.  R. at 18.  The ALJ thus determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  R. at 20.  Ultimately, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work with the following qualifications:

> the claimant could only lift or carry up to 10 pounds frequently and 20 pounds occasionally.  He could stand or walk, with normal breaks, for a total of 6 hours in an 8-hour workday, and could sit, with normal breaks, for a total of 6 hours in an 8-hour workday.  He could perform pushing and pulling motions with upper and lower extremities within the weight restrictions given.  He can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. However, bilaterally, handling and feeling would be limited to only frequent, and bilateral fingering would be limited to occasional.  He should avoid unprotected heights and moving machinery.  He could perform each of the following postural activities frequently: climbing of ramps or stairs,

2

balancing, stooping, crouching, kneeling, and crawling.  However, he could never climb ladders, ropes, or scaffolds on the job.

R. at 20–21.  The ALJ determined that plaintiff is capable of performing past relevant work as a "foreign agent."  R. at 25.

On August 31, 2020, the Appeals Council denied plaintiff's request for a review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality

3

test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d

1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful work

that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a
> severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and (5)
> whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§§ 404.1520(b)–(f)).  A finding that the claimant is disabled or not disabled at any point

in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff raises four objections to the ALJ's decision: (1) the ALJ was "required to obtain testimony from a medical expert in order to determine whether Mr. Cushman's impairments medically equaled a Listing"; (2) the ALJ "erred in failing to find Dr. [Augusto R. de Leon, Jr.'s] opinion to be consistent with the record as a whole"; (3) the ALJ "erred in failing to find [Dr. William Erhard Eyring, III's] opinion to be persuasive and in failing to include the resulting limitations in the RFC assessment"; and (4) the ALJ "erred in failing to find Mr. Cushman's limitations consistent with the record pursuant to SSR 16-3p."  Docket No. 21 at 6–12.  The Court addresses each in turn.

### A.  Medical Expert Testimony

Plaintiff explains that an October 2019 electromyogram ("EMG") of plaintiff's

5

hands "reveal[ed] mild to moderate bilateral carpal tunnel syndrome, bilateral and chronic C7 radiculopathy including denervation with reinnervation in the bilateral tricep and EDC muscles as well as a mild sensory axonal polyneuropathy affecting his upper extremities." *Id.* at 6.  As a result, plaintiff contends that, although the ALJ is correct that there is no listing for carpal tunnel and evaluated plaintiff's condition under Listing 11.14, the ALJ failed to obtain necessary testimony from a medical expert about "the equivalency of the Listing." *Id.* at 7.  Plaintiff relies on "HALLEX I-2-6-70" and Social Security Ruling ("SSR") 86-8.  *Id.*  "HALLEX" is the "Hearings, Appeals and Litigation Law Manual" that the Social Security Administration publishes.

HALLEX I-2-6-70 states, in relevant part, that "[a]n ALJ must obtain testimony from a [medical expert ("ME")] in order to determine that a claimant's impairments medically equal a medical listing."  HALLEX I-2-6-70(A), Note 2.  The Court agrees with defendant that this means that medical expert testimony is necessary only if the ALJ determines that a claimant's impairments meet a listing.  *See* Docket No. 22 at 10–11. Although the manual states that an ALJ "will consider opinions about medical equivalence from a physician or psychologist designated by the Commissioner *whenever* a claimant is not engaging in substantial gainful activity and has a severe impairment(s) that does not 'meet' the requirements of a listing," HALLEX I-2-6-70(D) (emphasis added), the manual clarifies that an ALJ "must obtain ME testimony specific to the issue of medical equivalence *if* he or she intends to find that the claimant equals the requirements of a listing." *Id.* (emphasis added).  This is consistent with the manual's statement that an ALJ must consult medical expert testimony if the ALJ determines that the claimant's impairments meet a listing, but does not need to consult medical expert

6

testimony if the ALJ determines that the claimant's impairments do not meet a listing.

This is consistent with SSR 86-8 and SSR 17-2p, which HALLEX I-2-6-70 cites. SSR 86-8 states, in part, that "[a]ny decision as to whether an individual's impairment or impairments are medically equivalent of a listed impairment must be based on medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques, including consideration of a medical judgment about medical equivalence furnished by one or more physicians designated by the Secretary." This means that the ALJ's decision must be based on medical evidence, but there is no requirement in SSR 86-8 that the ALJ must obtain medical expert testimony. Additionally, SSR 17-2p states that, "[t]o assist [the ALJ] in evaluating [whether the claimant's impairments meet or equal a listing], adjudicators at the hearings level *may* ask for and consider evidence from medical experts . . . about the individual's impairment(s), such as the nature and severity of the impairment(s)" and, if the ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we *do not* require the adjudicator to obtain ME evidence." SSR 17-2 (emphasis added). Again, although the ALJ's decision must be based on medical evidence, the ALJ has discretion in considering medical expert testimony. Therefore, the Court will not reverse the ALJ's decision for not obtaining medical expert testimony.

### B.  Dr. de Leon's Opinion

Plaintiff argues that the ALJ erred in "disregarding" Dr. de Leon's opinion because, although plaintiff concedes that the records contain findings of normal gait and strength, "there were also many abnormal objective findings."  Docket No. 21 at 7–8. Thus, plaintiff insists, the ALJ's decision was not based on substantial evidence.  *Id.* at

8.

The ALJ did not "disregard" Dr. de Leon's opinions, but rather found them not persuasive because they were not supported by Dr. de Leon's own examination findings or other record evidence.  R. at 24.  The ALJ noted that Dr. de Leon opined that plaintiff could only sit and stand for five minutes and walk for an hour because of plaintiff's plantar fasciitis, yet, according to the ALJ, reference to plaintiff's plantar fasciitis appears only in Dr. de Leon's report, yet Dr. de Leon also noted that plaintiff had a "normal gait and station," normal range of motion with no paraspinal muscle tenderness, normal muscle strength in the bilateral upper and lower extremities, negative Romberg sign, intact cranial nerves, normal reflexes, and no sensory deficits.  *Id.*  Dr. de Leon also found that plaintiff had no difficulty getting on and off the examination table and was able to squat, rise, and walk on heels and toes.  *Id.*; *see* R. at 394–401.  The ALJ thus found Dr. de Leon's proposed limitation to be unsupported by Dr. de Leon's own records.  R. at 24.  The ALJ also evaluated Dr. de Leon's opinion against the medical records and found the opinion to be unsupported because, notwithstanding some record of abnormality, the bulk of plaintiff's records contain normal examination findings, including normal "gait and station," *id.* (citing R. at 334, 424, 429, 434, 468, 475, 484, 546), and normal motor strength.  *Id.* (citing R. at 412, 416, 484, 546).

Therefore, although plaintiff is correct that the record contains some evidence of abnormal findings, *see* Docket No. 21 at 8 (citing R. at 416, 490, 510, 523, 526), a district court may not reverse an ALJ's decision simply because the court may have reached a different result based on the record.  *See Biestek*, 139 S. Ct. at 1154.  Rather, a court is to consider whether the ALJ's decision was supported by substantial evidence,

which is "more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted).  The Court does not "reweigh the evidence," *see Flaherty*, 515 F.3d at 1070, and the existence of some abnormal results does not mean that the ALJ's decision was "overwhelmed by other evidence in the record."  *See Musgrave*, 969 F.2d at 1374.  Moreover, as the ALJ noted, the state agency medical consultants, Dr. Frank Walker and Dr. Lewis Barton, found that plaintiff could perform work activities at the full range with some restrictions.  R. at 24.  It is reasonable for an ALJ to give a state agency physician great weight, and the ALJ found these doctors' opinions generally persuasive, because state medical consultants are experts in social security disability determinations.  *See* 20 C.F.R. § 404.1527(e); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (if ALJ relies on opinion of nontreating physician, ALJ must explain the weight given to that opinion and how the opinion is weighed given treating physician's opinion); *Martinez v. Comm'r of Soc. Sec.*, 777 F. App'x 930, 936 (10th Cir. 2019) (unpublished) ("As a State agency medical consultant, Dr. Matus is a highly qualified expert in Social Security evaluation."); *Andersen v. Colvin*, 541 F. App'x 842, 846 (10th Cir. 2013) (unpublished) (ALJ "properly gave more weight to the opinion of the state agency physician"); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) (unpublished) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").  The Court thus finds that the ALJ's decision was supported by substantial evidence in the record and that the ALJ properly considered the record as a whole.  *See Angel*, 329 F.3d at 1209.

### C.  Dr. Eyring's Opinion

Plaintiff objects to the ALJ's "failing to find Dr. Eyring's opinion to be persuasive" and not including Dr. Eyring's limitations in the RFC.  Docket No. 21 at 8–9.  The ALJ found Dr. Eyring's opinions partially persuasive.  R. at 19.  The ALJ found persuasive Dr. Eyring's opinion that plaintiff had no more than a mild impairment in his ability to understand and remember simple instructions, attend and follow through on complex instructions, make judgments, and interact properly with others.  *Id.*; R. at 392.  The ALJ found unpersuasive Dr. Eyring's conclusion that plaintiff has a mild to moderate impairment in responding to day-to-day stresses because there was "no indication that Dr. Eyring reviewed the claimant's records," but instead "relied heavily on the claimant's subjective report and the results of the mental status examination for his findings," which examination did not consider plaintiff's ability to respond to day-to-day stresses.  R. at 19.  Thus, the ALJ determined that Dr. Eyring's opinion on plaintiff's mild to moderate impairment in responding to day-to-day stress was not supported by the "great weight of the evidence."  *Id.*

Plaintiff states that, because the mental status examination did not test for plaintiff's ability to respond to day-to-day stress, it was "not inconsistent with Dr. Eyring's opinion."  Docket No. 21 at 9.  Plaintiff's argument misses the point, which is that the mental status examination could not have formed the basis of Dr. Eyring's opinion on plaintiff's ability to manage day-to-day stress because the examination did not test for that.  Moreover, plaintiff does not dispute that Dr. Eyring did not review his records.  Thus, as the ALJ noted, Dr. Eyring's opinion was based on plaintiff's subjective reports.  *See* R. at 19.  Plaintiff's subjective reports, however, are not sufficient to show that the

ALJ's decision was not supported by substantial evidence where the state agency psychological consultant, who reviewed plaintiff's records, disagreed with some of Dr. Eyring's findings, *see id.* (citing R. at 67, 88), plaintiff chose to not take some of his psychotropic medications without planning on resuming them, and the record reflects stable mental status findings within normal limits.  *See id.* (citing R. at 331, 334 412, 424, 429, 434, 468, 475, 546).

As to plaintiff's objection that the ALJ erred by not including Dr. Eyring's findings in the RFC, the Court notes that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); 20 C.F.R. § 404.1546(c) (ALJ assesses RFC); *see also Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 186 (10th Cir. 2018) (unpublished) (holding that ALJ did not substitute his own opinion for physician's in discounting doctor's opinions because "[t]he ALJ simply determined that [the physician's] sitting, standing, and walking limitations were not supported by objective evidence, which is a legitimate basis for the ALJ to afford the opinion less weight").  The Court finds that the ALJ's decision was supported by substantial evidence in the record.

### D.  Social Security Rule 16-3p

Plaintiff argues that the ALJ failed to comply with SSR 16-3p, which requires the ALJ to state specific reasons for the weight given to plaintiff's statements regarding his own limitations.  Docket No. 21 at 9–10.  Plaintiff also insists that the ALJ did not consider the "objective findings," such as plaintiff's imaging and nerve tests, treatment, and activities of daily living.  *Id.* at 11–12.

SSR 16-3p requires an ALJ to follow a two-step process.  First, the ALJ "must

11

consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p.  Second, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*  Under SSR 16-3p, an ALJ must "consider all of the evidence in an individual's record," including "all of the individual's symptoms . . .  and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record," *id.*, as well as the claimant's "statements about the intensity, persistence, and limiting effects of symptoms" and evaluates whether the claimant's "statements are consistent with objective medical evidence and the other evidence."  SSR 16-3p(2)(a).  For instance, the ALJ takes account of the claimant's "attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed."  *Id.*

The Court finds that the ALJ complied with SSR 16-3p.  The ALJ considered plaintiff's subjective complaints, including his Adult Function Report and other disability documents in which plaintiff reported his conditions, as well as plaintiff's statements about his activities of daily living and his testimony at the hearing.  *See* R. at 18–22.  The ALJ noted that plaintiff reported difficulty committing to a work schedule, pain in his neck and upper back, neuropathy in his feet, and insomnia.  R. at 21.  The ALJ reported plaintiff's statements that he was able to read, exercise, go to restaurants, prepare meals, perform household chores, including laundry and cleaning.  *Id.*  The ALJ summarized plaintiff's descriptions that he used to be more active and had many hobbies that he had to stop doing, including hiking, skiing, and martial arts, but that he

was able to continue swimming and yoga.  *Id.*  Plaintiff also reported that he could walk

a mile before needing a break.  R. at 22.  The ALJ recounted plaintiff's complaints that

extended sitting, standing, and bending exacerbated his pain, that he has no feeling in

his fingertips and neuropathy in his feet, that he struggles with typing, filling out forms,

and manipulating small things, and reported stumbling and falling, as well as breaking

his toes.  *Id.*  The ALJ thus determined that plaintiff's impairments could be expected to

cause his symptoms, but that plaintiff's statements regarding persistence and intensity

were not consistent with the record.  *Id.*  The ALJ highlighted plaintiff's independent

living, exercising, going to restaurants, theatre, and concerts, swimming, walking,

exercising, *id.*, that plaintiff's fibromyalgia is treated with gabapentin and sertraline, that

plaintiff has normal gait, station, strength, reflexes, and range of motion, negative

Romberg sign, intact cranial nerves, and had no difficulty getting on and off of the

examination table or squatting, rising, or walking on heels and toes.  R. at 22–23 (citing

R. at 398, reflecting "normal" ability to walk on heels and toes).  Contrary to plaintiff's

argument, *see* Docket No. 21 at 10–11, the ALJ also considered plaintiff's MRIs and

EMGs, as well as the opinions of Dr. Eyring, Dr. de Leon, Dr. Walker, and Dr. Barton.  R.

at 23–25.  The ALJ found some of the evidence, including some physicians' opinions, to

be persuasive and consistent with the record, but found some opinions and findings to

be less persuasive and inconsistent with the record.  The ALJ thus considered plaintiff's

statements and evaluated those statements against "objective medical evidence and the

other evidence," as SSR 16-3p(2)(a) requires.  Moreover, even if the Court were to

disagree with the ALJ's ultimate determination, the Court could not reverse the ALJ just

because the Court may have reached a different conclusion.  *See Biestek*, 139 S. Ct. at

1154.  Rather, a court is to consider whether the ALJ's decision was supported by substantial evidence, which it was.  *See id.*

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED May 5, 2022.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

14